**LTS GROUP, INC., Appellant,**

v.

**WOODCREST CAPITAL, L.L.C., Appellee.**

**No. 05–05–01426–CV.**

Court of Appeals of Texas, Dallas.

April 30, 2007.

Kenneth B. Chaiken, Steven D. Goldston, Chaiken & Chaiken, P.C., Dallas, for appellant.

John W. Greene, Frank Hill, Hill Gilstrap, P.C., Arlington, for appellee.

Before Justices MOSELEY, BRIDGES, and RICHTER.

## OPINION

Opinion by Justice BRIDGES.

LTS Group, Inc. appeals the trial court's judgment notwithstanding the verdict on LTS's quantum meruit claims against Woodcrest Capital, L.L.C. In one issue and one conditional issue, LTS argues the trial court erred in granting Woodcrest's motion for judgment notwithstanding the verdict and, should this Court determine that the jury's award of $75,000 is not supported by the record, this Court should determine whether the trial court erred in refusing to disregard the jury's finding of $75,000 and failing to find that the value of LTS's claims was $200,000 as a matter of law. We affirm the trial court's judgment.

On September 6, 2000, LTS entered into an agreement with Massachusetts Mutual Life Insurance Corporation whereby LTS would purchase an office building in Fort Worth. Under the terms of the contract, a thirty-day "due diligence period" followed the signing of the agreement. The agreement gave LTS the right to terminate the agreement at any time during the due diligence period. The agreement also provided, in part, that "Buyer shall not assign this Agreement without Seller's prior written consent, which consent may be withheld in Seller's sole and absolute discretion...." After the agreement was signed, Massachusetts Mutual gave LTS extensive documents concerning the property, including copies of leases, rent information, current operating statements and property tax statements for the prior three years, commission agreements, service and maintenance agreements, a recent survey, occupancy permits, structural, mechanical, electrical, plumbing, and other engineering reports, ADA or accessibility reports, and notice of violations from a governmental agency. LTS also hired structural engineers, a mechanical engineer, and a company that developed an environmental report "working off of" a report supplied by Massachusetts Mutual.

In early October 2000, Doug Wilder, a commercial real estate broker, approached Cary Platt, LTS's president, to see if LTS was interested in buying or selling any property. Platt told Wilder LTS was working on buying an office building in Fort Worth. Wilder asked if Platt was "dead set about proceeding with the deal," and Platt said, "if somebody wanted to come in and buy the contract from us, we would entertain that." Wilder called Platt a few days later and said he had showed the building to Jim Ryffell, Woodcrest's president. Ryffel met with Platt and the brokers and discussed potential broker's fees and "what everybody's expectations were." Ryffel was only interested in an assignment of LTS's contract and did not

want to become partners with Platt or form a joint venture or conduct a simultaneous closing.

During the due diligence period but before LTS had completed its due diligence, Woodcrest approached LTS and inquired about buying LTS's rights under the contract and compensating LTS $230,000. Ryffel asked Platt "if it would be a problem getting the due diligence information." Platt responded that LTS "had not considered selling the contract or the building but we would, but we needed to be emphatic that we basically had a deal before I gave [Ryffel] any of that information." Ryffel "said we have a deal."

LTS turned over to Woodcrest all of the due diligence information. In the course of due diligence, LTS learned it "had to get the environmental report settled down because [its] lender did not like the wording in Massachusetts Mutual's environmental report." By October 30, Platt had "written off Woodcrest buying the property from [LTS]," and he called the broker for Massachusetts Mutual to extend the closing date to December 6. On October 30 or 31, Platt received Woodcrest's written offer to purchase the building. Unsatisfied with the price stated in the offer and the timeframe in the offer, Platt made a "five line or a five point" counteroffer that he sent to Woodcrest. In the meantime, Massachusetts Mutual refused to extend the closing date, and Platt "terminated the contract to protect the remaining portion of the earnest money, which was $85,000, or else that would have been nonrefundable." Woodcrest subsequently bought the property from Massachusetts Mutual but never paid LTS anything for the due diligence materials. LTS sued Woodcrest under a quantum meruit theory, and a jury awarded LTS $75,000 in damages. The trial court granted Woodcrest's motion for judgment notwithstanding the verdict and entered judgment that LTS take nothing on its claims. This appeal followed.

 In its first issue, LTS argues the trial court erred in granting Woodcrest's motion for judgment notwithstanding the verdict. Specifically, LTS argues the jury's award of $75,000 was supported by some evidence and should not have been set aside. A trial court's decision to grant a judgment notwithstanding the verdict should be affirmed if there is no evidence to support one or more of the jury findings on issues necessary to liability. *Wal-Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex.2003). In reviewing a "no evidence" point, we must view the evidence in a light that tends to support the finding of a disputed fact and disregard all evidence and inferences to the contrary. *Id.* If more than a scintilla of evidence supports the jury's findings, the jury's verdict and not the trial court's judgment must be upheld. *Id.* More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Lee Lewis Const., Inc. v. Harrison,* 70 S.W.3d 778, 782–83 (Tex.2001).

 Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received. *Heldenfels Bros. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex.1992). To recover under the doctrine of quantum meruit, a plaintiff must establish that: (1) valuable services and/or materials were furnished, (2) to the party sought to be charged, (3) which were accepted by the party sought to be charged, and (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient. *Id.* A party must introduce evidence on the correct measure of damages to recover on quantum meruit, which is the reasonable value of work performed and the materials

furnished. *See M.J. Sheridan & Son v. Seminole Pipeline*, 731 S.W.2d 620, 625 (Tex.App.-Houston [1st Dist.] 1987, no writ). To recover in quantum meruit, the plaintiff must show that his efforts were undertaken *for* the person sought to be charged; it is not enough merely to show that his efforts benefited the defendant. *Gibson v. Bostick Roofing and Sheet Metal*, 148 S.W.3d 482, 490 (Tex.App.-El Paso 2004, no pet.). The expectation of a future business advantage or opportunity cannot form the basis of a cause of action for quantum meruit. *Peko Oil USA v. Evans*, 800 S.W.2d 572, 576 (Tex.App.-Dallas 1990, writ denied).

Here, Platt testified that LTS provided Woodcrest with all the financial information it had, including financial projections generated by LTS and "some proprietary information." Platt testified that $200,000 was "the reasonable value of the services and materials that were provided" to Ryffel and Woodcrest. When asked about the basis for his opinion, Platt testified that $200,000 was "less than 4 percent of the sales price, and a lot of brokers get more than that." It appears from this testimony that Platt based his opinion on the fact that LTS expected to get a fee in excess of $200,000 when Woodcrest purchased the property. However, this is no evidence as to the value of the due diligence materials generated by LTS and delivered to Woodcrest. Nor does Platt's reference to what fee a broker might have charged provide any evidence of the reasonable value of the work performed by LTS and the materials actually furnished by LTS. *See M.J. Sheridan*, 731 S.W.2d at 625. Further, LTS's agreement with Massachusetts Mutual was not assignable without Massachusetts Mutual's prior written consent, but LTS gave the financial information to Woodcrest anyway. Because the assignment of LTS's agreement could not be assigned without the participation and prior written consent of Massachusetts Mutual, it appears the materials were provided in expectation of a future advantage or business opportunity. *See Peko Oil*, 800 S.W.2d at 576. Thus, because there was no evidence to support the elements of LTS's claims, the trial court properly granted Woodcrest's motion for judgment notwithstanding the verdict. We overrule LTS's first issue.

Because of our conclusion that Platt's testimony regarding a $200,000 value was no evidence that would support the jury's verdict, we also reject LTS's contention, raised in its conditional issue, that the trial court erred in failing to find that the value of LTS's compensable work was $200,000. We overrule LTS's conditional issue.

We affirm the trial court's judgment.