Opinion
 issued November 4, 2010  
  
  
  
  
  
 
 
  
 
 


 



 

 

 

 

 

 

 

 

 

 

 

 

 

 

In The

Court of
Appeals

For The

First District
of Texas




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00924-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



GREEN GARDEN PACKAGING CO., INC AND GARDEN GOURMET
FRESH FOODS, INC., Appellants

 

V.

 

SCHOENMANN PRODUCE COMPANY, INC., Appellee

 

 



On Appeal from the 190th District Court

Harris County, Texas

Trial Court Cause No. 2007-56517

 

 



MEMORANDUM OPINION

          Appellants,
Green Garden Packaging Co., Inc. and Garden Gourmet Fresh Foods, Inc.
(collectively, “Green Garden”), challenge the trial court’s rendition of
summary judgment in favor of appellee, Schoenmann Produce Company, Inc.
(“Schoenmann”), in Green Garden’s suit against Schoenmann for breach of
contract, quantum meruit, misappropriation of trade secrets, and fraud.  In seven issues, Green Garden contends that
the trial court erred in concluding that Green Garden’s breach of contract
claim is barred by the statute of frauds, its quantum meruit claim fails for
lack of expectation of “cash consideration,” its “product information, forms,
and samples” did not constitute “protected trade secrets,” its fraud claim is
barred by the statute of frauds, and this Court should remand the case to allow
for discovery on Schoenmann’s lost profits in regard to Green Garden’s claim
for profit disgorgement. 

We affirm.

Background

          Green
Garden is a wholesale producer of fresh-cut vegetables, fruits, and ready-made
products including salad kits.  It
develops and owns equipment, recipes, and manufacturing processes for use in
producing these items.  Schoenmann
distributes fresh and packaged food items and produce to various clients,
including the Houston Independent School District (“HISD”).  In 2005, Schoenmann, to fulfill a produce
contract it had with HISD, began purchasing food items from Green Garden,
including fresh-cut vegetables, fruits, and salad kits.  

          In
its petition, Green Garden alleged that in the spring of 2007, when HISD was
compiling competitive bids on the produce contract, Schoenmann asked Green
Garden to provide its items “exclusively” to Schoenmann in exchange for
Schoenmann’s agreement to use Green Garden as the supplier of these items if
HISD accepted Schoenmann’s bid.  Based
upon this agreement, Green Garden provided Schoenmann “detailed written
information on its products for use in preparing a bid to HISD.” Green Garden
prepared a confidentiality notice, which provided that Green Garden’s information
and product specifications were “confidential” and “proprietary,” and then gave
samples of its products to Schoenmann. 
Schoenmann then submitted the confidentiality notice and the samples to
HISD.  

Green Garden further alleged that the
food items it provided were made according to strict specifications and
processes developed over a number of years and these processes and
specifications constituted valuable trade secrets.  Also, its information and products had been a
“key part” of Schoenmann’s bid because no other local producer had been
prepared to supply the required items and information.  As a result, Schoenmann was the only
distributor to submit a compliant bid, and Schoenmann won the HISD contract for
a one-year term beginning in August 2007. 
However, Schoenmann did not purchase food items from Green Garden to
fulfill the HISD contract, and it shared Green Garden’s specifications and
confidential information with other suppliers. 


Green Garden claimed that Schoenmann
had breached its contract to purchase Green Garden products after using its
trade secrets, samples, and other information in submitting the bid to
HISD.  In support of its quantum meruit
claim, Green Garden asserted that it had exclusively provided Schoenmann with
product information, specifications, and samples and had not been
compensated.  Green Garden also claimed
that Schoenmann had misappropriated Green Garden’s trade secrets under false
pretenses and that Schoenmann had used Green Garden’s trade secrets to assist
other producers in developing products that Schoenmann had previously purchased
from Green Garden.  Green Garden further
claimed that Schoenmann had fraudulently induced Green Garden into providing
the information and specifications exclusively to Schoenmann, which represented
that it would continue to use Green Garden as a supplier, and Green Garden
relied upon Schoenmann’s false statements in foregoing opportunities with other
distributors. 

Green Garden sought to recover as
damages its anticipated lost profits in supplying products to Schoenmann for
the minimum term of the HISD contract, which amounted to more than
$200,000.  Green Garden also sought to
recover profits that Schoenmann wrongfully obtained by using Green Garden’s
products and trade secrets, which amounted to over $250,000.  In regard to its quantum meruit claim, Green
Garden sought the reasonable value of the information and services it had
provided.  

Schoenmann denied Green Garden’s
allegations and asserted a counterclaim for malicious prosecution.  Schoenmann then filed a motion for partial
summary judgment on Green Garden’s breach of contract claim, arguing that it
was barred as a matter of law by the statute of frauds because the purported
agreement involved a sale of goods in excess of $500[1] and
because the purported agreement, which was allegedly formed in April 2007 for a
minimum one-year term commencing in August 2007, was not performable within one
year from the date of making.[2]  In support of its summary judgment motion,
Schoenmann attached the affidavit of Mark Steakley, an officer of
Schoenmann.  Steakley testified that in
2007, when HISD was compiling competitive bids on the contract, Schoenmann
asked Green Garden and two other vendors to submit product samples, Schoenmann
was awarded the HISD contract that commenced in August 2007 for a one-year
term, and Schoenmann purchased items for this contract from a vendor other than
Green Garden. Schoenmann also attached to its motion excerpts from the
deposition testimony of Anthony Faour, Green Garden’s president, who admitted
that there was no written documentation of any agreement between Schoenmann and
Green Garden.

In its summary judgment response,
Green Garden argued that the statute of frauds did not bar its breach of
contract claim because the parties could have terminated or fully performed the
agreement within one year of its inception and Green Garden had in fact
partially performed the “the most valuable part of” the contract by exclusively
“providing extensive proprietary information forms and samples” to
Schoenmann.  Green Garden attached to its
response the affidavit of Anthony Faour, who testified that Schoenmann had
contacted Green Garden for assistance, products, and information in preparing its
bid to HISD, Green Garden was the only producer in the Houston market that had
available the full complement of the products required by HISD and related
information and forms, Schoenmann proposed an agreement whereby Green Garden
would provide this information exclusively to Schoenmann in exchange for
Schoenmann’s agreement to use Green Garden as a supplier, and Faour agreed to
this on behalf of Green Garden.  Faour
further testified that the “detailed written information required for the HISD
bid” provided to Schoenmann by Green Garden was accompanied by the “notice of
confidential and proprietary information,” Schoenmann was the only distributor
able to submit a bid to HISD with all required products and information,
Schoenmann was awarded the contract, and, contrary to their agreement, Schoenmann
did not subsequently purchase products from Green Garden or compensate Green
Garden for its assistance in the bidding process.  After a hearing, the trial court granted
Schoenmann’s motion for partial summary judgment on Green Garden’s breach of contract
claim.  

Schoenmann then filed a summary
judgment motion on Green Garden’s remaining claims of quantum meruit,
misappropriation of trade secrets, and fraud. 
Schoenmann argued that Green Garden’s quantum meruit claim failed as a
matter of law because the summary judgment evidence established that Green
Garden had provided its information and samples only in hopes of obtaining a
future business relationship with Schoenmann and it had no reasonable
expectation of compensation for the services and information it provided in the
bidding process.  Schoenmann asserted
that, under this “fairly common scenario in which a party furnishes services or
materials  . . . in anticipation of a
contract,” the law prohibits quantum meruit recovery.  Schoenmann also asserted that there is no
evidence that Green Garden had expected compensation for the services and
information it provided and no evidence of their value.  Schoenmann noted that the only measure of
recovery sought by Green Garden in its quantum meruit claim, i.e., its lost
profits, is improper because it “would essentially amount to a commission based
on the value of the HISD contract.” 
Schoenmann also argued that Green Garden’s claims for misappropriation
of trade secrets failed as a matter of law because Green Garden had not
provided Schoenmann with trade secrets and Schoenmann did not use or disclose
any trade secrets.  Schoenmann asserted
also that there is no evidence to support any of the elements of Green Garden’s
misappropriation of trade secrets claim. 
Finally, Schoenmann argued that Green Garden’s fraud claim failed as a
matter of law because a plaintiff like Green Garden, whose breach of contract
claim is barred by the statute of frauds, cannot seek recovery of
benefit-of-the-bargain damages through a fraud claim.  Schoenmann asserted also that there is no
evidence of damages other than the claimed benefit-of-the-bargain damages.

In its response to Schoenmann’s
motion, Green Garden asserted that quantum meruit recovery is allowed when a
party expects compensation through a new business arrangement, evidence of lost
profits may be used to establish quantum meruit damages, there is evidence that
its information and products constituted trade secrets, and it was entitled to
seek disgorgement of Schoenmann’s profits under its fraud claim.

After a hearing, the trial court,
without specifying the grounds upon which it relied, granted Schoenmann’s
summary judgment motion, ordering that Green Garden take nothing on its claims
against Schoenmann.  The trial court
subsequently dismissed, without prejudice, Schoenmann’s malicious prosecution
counterclaim and entered a final judgment.

Standard of Review

To prevail on a summary judgment
motion, a movant has the burden of proving that it is entitled to judgment as a
matter of law and that there is no genuine issue of material fact. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341
(Tex. 1995).  When a defendant moves for
summary judgment, it must either (1) disprove at least one essential element of
the plaintiff’s cause of action or (2) plead and conclusively establish each
essential element of its affirmative defense, thereby defeating the plaintiff’s
cause of action. Cathey, 900 S.W.2d
at 341; Yazdchi v. Bank One, Tex., N.A.,
177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).  When deciding whether there is a disputed,
material fact issue precluding summary judgment, evidence favorable to the
non-movant will be taken as true. Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex. 1985).  Every reasonable inference must be indulged in
favor of the non-movant and any doubts must be resolved in its favor.  Id.
at 549.

To prevail on a no-evidence summary
judgment motion, a movant must allege that there is no evidence of an essential
element of the adverse party’s cause of action or affirmative defense.  Tex. R.
Civ. P. 166a(i); Fort Worth
Osteopathic Hosp., Inc. v. Reese, 148 S.W.3d 94, 99 (Tex. 2004).  We review a no-evidence summary judgment under
the same legal sufficiency standard used to review a directed verdict. Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,
12 S.W.3d 827, 832–33 (Tex. App.—Dallas 2000, no pet.).  Although the nonmoving party is not required
to marshal its proof, it must present evidence that raises a genuine issue of
material fact on each of the challenged elements. Tex. R. Civ. P. 166a(i); see
Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  A no-evidence summary judgment motion may not
be granted if the nonmovant brings forth more than a scintilla of evidence to
raise a genuine issue of material fact on the challenged elements.  See
Ridgway, 135 S.W.3d at 600. More than a scintilla of evidence exists when
the evidence “rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions.”  Merrell Dow Pharms., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997).  When reviewing a no-evidence summary
judgment motion, we assume that all evidence favorable to the nonmovant is true
and indulge every reasonable inference and resolve all doubts in favor of the
nonmovant.  Spradlin v. State, 100 S.W.3d 372, 377 (Tex. App.—Houston [1st
Dist.] 2002, no pet.). 

If the trial court’s order granting
summary judgment motion does not specify the grounds upon which the trial court
relied, we must affirm the summary judgment if any of the grounds in the
summary judgment motion are meritorious. FM
Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872–73 (Tex. 2000); Harwell v. State Farm Mut. Auto. Ins. Co.,
896 S.W.2d 170, 173 (Tex. 1995).

Breach of Contract

In its first issue, Green Garden
argues that the trial court erred in granting summary judgment in favor of
Schoenmann on its breach of contract claim on the basis that the claim is
barred by the statute of frauds because the contract could have been performed
within one year, the contract is enforceable under the partial performance
doctrine, and Green Garden partially performed on an “indivisible contract.”  

Whether the statute of frauds applies
to bar Green Garden’s breach of contract claim is a question of law.  Henriquez
v. Cemex Mgmt., Inc., 177 S.W.3d 241, 250 (Tex. App.—Houston [1st Dist.] 2005,
pet. denied) (holding that proffered writing did not satisfy statute of frauds
as matter of law).  

Schoenmann sought summary judgment
under the statute of frauds (1) for a contract for the sale of goods for price
of $500 or more, see Tex. Bus. & Com. Code Ann. § 2.201
(Vernon 2009), and (2) for a contract not to be performed within one year from
date of making.  See id. § 26.01(b)(1) (Vernon 2009).  Section 2.201, which applies to a sale of
goods, provides,

(a)     Except as
otherwise provided in this section a contract for the sale of goods for the
price of $500 or more is not enforceable by way of action or defense unless
there is some writing sufficient to indicate that a contract for sale has been
made between the parties and signed by the party against whom enforcement is
sought or by his authorized agent or broker. A writing is not insufficient
because it omits or incorrectly states a term agreed upon but the contract is
not enforceable under this paragraph beyond the quantity of goods shown in such
writing.

 

See id. §
2.201(a).  Here, it is undisputed that
there is no writing evidencing the alleged agreement between Green Garden and
Schoenmann. Moreover, the summary judgment evidence conclusively establishes
that the alleged agreement that Green Garden seeks to enforce against
Schoenmann was for a sale of goods that exceeded $500.  Thus, section 2.201 applies to bar Green
Garden’s breach of contract claim, unless an exception applies. 

Section 2.201 provides several
statutory exceptions to the application of the statute of frauds.  See id.  A contract for a sale of goods of $500 or
more that does not satisfy the requirements of subsection (a) of section 2.201
but is valid in other respects is enforceable,

(1)     if the
goods are to be specially manufactured for the buyer and are not suitable for
sale to others in the ordinary course of the seller’s business and the seller,
before notice of repudiation is received and under circumstances which
reasonably indicate that the goods are for the buyer, has made either a substantial
beginning of their manufacture or commitments for their procurement; or 

 

(2)     if the
party against whom enforcement is sought admits in his pleading, testimony or
otherwise in court that a contract for sale was made, but the contract is not
enforceable under this provision beyond the quantity of goods admitted; or 

 

(3)     with
respect to goods for which payment has been made and accepted or which have
been received and accepted (section 2.606).

 

See id. §
2.201(c)(1)-(3).  However, none of these
exceptions apply in this case. Green Garden did not specially manufacture any
food items, Schoenmann has not admitted that a contract for sale of these food
items was ever made, and there is no evidence that any payments were made or
accepted or that any food items were received or accepted by Schoenmann.   

Green Garden asserts that it
partially performed the contract[3];
“the essence of the agreement” was “the proprietary information, forms, and
samples” it provided to Schoenmann during the bidding process; and, in its
attempt to recover the lost profits from the produce contract, the “valuable
consideration” it provided “could not possibly be separated apart from the
goods that were then to be supplied if the HISD contract was obtained.”  However, the agreement on which Green Garden
seeks recovery is, at its core, an agreement that would have required
Schoenmann to purchase food items, valued well in excess of $500, from Green
Garden for a minimum of a one-year term. 
Although Green Garden has presented evidence that it exclusively
provided Schoenmann with information and samples of its products in the course
of the bidding process, and although Green Garden asserts that it did this
pursuant to an agreement with Schoenmann, the only consideration Green Garden sought
under its alleged agreement was Schoenmann’s purchase of goods from Green
Garden.  Such a contract plainly falls
within section 2.201(a), and, without a writing to evidence the agreement, it
is unenforceable under the statute of frauds. 
See id. § 2.201.  Accordingly, we hold that the trial court did
not err in granting summary judgment on Green Garden’s breach of contract
claim.

We overrule Green Garden’s first
issue.

Quantum Meruit

In its second and third issues, Green
Garden argues that the trial court erred in granting summary judgment in favor
of Schoenmann on its quantum meruit claim because it provided services and
information to Schoenmann in exchange for the promise of future business and
because it presented sufficient evidence to support the elements of its quantum
meruit claim.  

Quantum meruit provides an equitable
remedy which does not arise out of a contract, but is independent of it.  Vortt
Exploration Co. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990).  Founded on unjust enrichment, quantum meruit
“will be had when non payment for the services rendered would result in an
unjust enrichment to the party benefited by the work.”  Id.  “Quantum meruit ‘is based upon the promise
implied by law to pay for beneficial services rendered and knowingly
accepted.’”  Speck v. First Evangelical Lutheran Church of Houston, 235 S.W.3d
811, 815 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing Campbell v. Nw. Nat’l Life Ins. Co., 573
S.W.2d 496, 498 (Tex. 1978)).  

To recover under quantum meruit, a
claimant must prove that (1) valuable services were rendered or materials
furnished; (2) for the person sought to be charged; (3) which services and
materials were accepted by the person sought to be charged and were used and
enjoyed by him; (4) under such circumstances as reasonably notified the person
sought to be charged that the plaintiff in performing such services was
expecting to be paid by the person sought to be charged.  Vortt
Exploration Co., 787 S.W.2d at 944; Speck,
235 S.W.3d at 815.  The expected payment
need not be monetary and may be in “any form of compensation.”  Vortt
Exploration Co., 787 S.W.2d at 945. 
However, a party seeking to recover on a claim of quantum meruit must
introduce evidence on the correct measure of damages, which is the reasonable
value of the work performed or the materials furnished.  M.J.
Sheridan & Son Co. v. Seminole Pipeline Co., 731 S.W.2d 620, 624–25
(Tex. App.—Houston [1st Dist.] 1987, no writ); Johnston v. Kruse, 261 S.W.3d 895, 902 (Tex. App.—Dallas
2008, no pet.); LTS Group, Inc. v.
Woodcrest Capital, L.L.C., 222 S.W.3d 918, 920—921 (Tex. App.—Dallas 2007,
no pet.); see also City of Houston v.
Swinerton Builders, Inc., 233 S.W.3d 4, 10 n.7 (Tex. App.—Houston [1st
Dist.] 2007, no pet.) (comparing damages available under breach of contract and
quantum meruit claims and noting that proper measure of damages for breach of
contract “is just compensation for the loss or damage actually sustained,
commonly referred to as the benefit of the bargain,” while “proper measure of
damages for a claim in quantum meruit is the reasonable value of work performed
and the materials furnished”).

Schoenmann sought summary judgment on
Green Garden’s quantum meruit claim on a number of grounds.  We need only consider Schoenmann’s
no-evidence summary judgment motion, in which Schoenmann asserted that Green
Garden presented no evidence of the value of the alleged services, information,
and goods it provided.[4]  In its summary judgment response and on
appeal, Green Garden recognizes that “the measure of damages in quantum meruit
is not lost profit in itself” but instead the “reasonable value of the
services” performed.  Yet, Green Garden
asserts that the lost profits that it expected to earn as a supplier to
Schoenmann “are the best, if not the only”
measure of the value of services that it rendered.  (Emphasis added.)  Green Garden makes clear in its briefing to
this Court, as it did in its pleadings filed with the trial court below, that
the only measure of damages it seeks to recover is the full value of the
expected profits it allegedly lost as a result of Schoenmann not using it as
the supplier for the HISD contract. 
Green Garden argues that it is entitled to this amount of damages on its
quantum meruit claim because “the lost profits from that contract are what the
parties anticipated as consideration for Green Garden’s services.”

The only evidence offered in the
trial court by Green Garden concerning its damages on its quantum meruit claim
was its anticipated profits under the HISD contract.  This amount of damages, which, if awarded,
would grant Green Garden the full value of the HISD contract, is not a proper
measure of damages for a quantum meruit claim.[5]  Although lost profits may be a relevant
factor in calculating the value of services rendered in certain circumstances,
here, by seeking only this measure of damages, Green Garden has failed to
present any evidence of the reasonable value of the services that it actually
provided to Schoenmann.  See LTS Group, Inc., 222 S.W.3d at 921
(concluding that (1) plaintiff seeking quantum meruit recovery presented no
evidence as to value of due diligence materials it generated and delivered to
defendant and (2) reference to what fee broker might have generally charged in
real estate transaction provided no evidence of reasonable value of work
performed and materials actually furnished by plaintiff).   Because Green Garden presented no evidence
of quantum meruit damages, we hold that the trial court did not err in granting
summary judgment on Green Garden’s quantum meruit claim.  

We overrule Green Garden’s second and
third issues.

Trade Secrets

In its fourth and fifth issues, Green
Garden argues that the trial court erred in granting summary judgment on its
misappropriation of trade secrets claim because its “product information,
forms, and samples” constituted “protected trade secrets” and it presented
evidence to support each of the elements of its claim for misappropriation of
trade secrets.  Schoenmann responds that
the trial court could have properly granted its no-evidence summary judgment
motion because Green Garden presented no evidence that a trade secret existed,
Schoenmann used or disclosed any alleged trade secrets, or Schoenmann breached
a confidential relationship or improperly discovered the alleged trade
secret.  Alternatively, Schoenmann argues
that the trial court could have properly granted its summary judgment motion on
the ground that the evidence established as a matter of law that Green Garden’s
alleged trade secrets “related to generic recipes” and other information
already in the public domain, Schoenmann did not use or disclose Green Garden’s
information, and Green Garden was not damaged. 

A plaintiff may recover for
misappropriation of a trade secret by establishing that (1) a trade secret
existed; (2) the trade secret was acquired through a breach of a confidential
relationship or was discovered by improper means; (3) the defendant used the
trade secret without the plaintiff’s authorization; and (4) the plaintiff
suffered damages as a result. Tex.
Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc., 300
S.W.3d 348, 366–67 (Tex. App.—Dallas 2009, pet. denied); Trilogy Software, Inc. v. Callidus Software, Inc., 143 S.W.3d 452,
463 (Tex. App.—Austin 2004, pet. denied).  Improper means of acquiring trade secrets
include theft, fraud, inducement of or knowing participation in a breach of
confidence, and other means either wrongful in themselves or under the
circumstances.  Astoria Indus. of Iowa, Inc. v. SNF, Inc., 223 S.W.3d 616, 636 (Tex.
App.—Fort Worth 2007, pet. denied).

A trade secret may consist of any
formula, pattern, device, or compilation of information used in one’s business
that provides an opportunity to obtain an advantage over competitors who do not
know or use it. Computer Assocs. Int’l,
Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996).  Items such as customer lists, pricing
information, client information, contacts, market strategies, blueprints, and
drawings have all been shown to be trade secrets. Am. Precision Vibrator Co. v. Nat’l Air Vibrator Co., 764 S.W.2d
274, 276–79 (Tex. App.—Houston [1st Dist.] 1988, no writ); Tex. Integrated Conveyor Sys., Inc., 300 S.W.3d at 367; Rugen v. Interactive Bus. Sys., Inc.,
864 S.W.2d 548, 552 (Tex. App.—Dallas 1993, no writ).  Use of a trade secret means commercial use,
by which a person seeks to profit from the use of the secret.  Global
Water Group, Inc. v. Atchley, 244 S.W.3d 924, 930 (Tex. App.—Houston [1st
Dist.] 2008, pet. denied); Atl. Richfield
Co. v. Misty Prods., Inc., 820 S.W.2d 414, 422 (Tex. App.—Houston [14th
Dist.] 1991, writ denied).  

In support of its claim that its
information, forms, and samples constituted trade secrets, Green Garden relies
on two pieces of evidence.  First, Green
Garden cites Faour’s testimony that it made its food items according to strict
specifications and processes developed over a number of years, Green Garden has
carefully protected these trade secrets from public disclosure, and Green
Garden’s salad kits are “extraordinarily difficult to design and produce.”  Green Garden also cites Faour’s testimony
that Green Garden was asked to provide HISD with product sample tracking and
verification forms, nutrient and ingredient documentation, lists of product
contents with weights and labeling, and a nutritional panel compliant with
federal standards; Green Garden provided this information on more than thirty
products; and the set of forms for each product included a notice that such
information was confidential and proprietary. 
Second, Green Garden relies on the confidentiality notice that it
provided to Schoenmann and which Schoenmann included in its HISD bid.  

In support of its claim that
Schoenmann misappropriated its trade secrets, Green Garden relies on Faour’s
affidavit testimony that Schoenmann used Green Garden’s “recipes and other
proprietary information” in submitting its bid to HISD. Green Garden asserts
that it “believes” its recipes were used by other producers, although it does
not cite any evidence in the record in support of that belief.  Green Garden states in its briefing that
these other producers used by Schoenmann “may or may not have used their own recipes.” (Emphasis added.)   

Despite Green Garden’s own
characterization of its recipes, samples, forms, manufacturing processes and
other information as trade secrets, there is no evidence in the record that
Green Garden actually possessed any trade secrets or that it, in supplying the
required information for the purposes of the HISD bid, disclosed any of its
trade secrets to Schoenmann.  The
testimony of the HISD employees establishes that distributors like Schoenmann
were required to submit a bid based upon HISD’s list of specific food items.
Schoenmann then contacted vendors, including Green Garden, for assistance in
preparing its bid.  But Green Garden does
not point to any evidence in the record, other than Faour’s general testimony,
establishing that the information actually conveyed by Green Garden to
Schoenmann consisted of trade secrets. 
The record demonstrates that Green Garden, as a vendor of fresh-cut
vegetables and various food items including salad kits, disclosed information
associated with the bidding process related to the ingredients and nutrition
contents of the submitted food items. 
But there is no evidence that Green Garden provided to Schoenmann design
specifications or other information that it had “developed” over the course of
several years that was not otherwise available in the public domain.  The mere fact that Green Garden included a
confidentiality notice, which Schoenmann subsequently furnished to HISD, does
not constitute evidence that Schoenmann acknowledged that Green Garden actually
provided it with trade secrets.  There is
nothing attached to the confidentiality notice contained in the record before
us that would create a fact issue on the existence of a trade secret.

Moreover, even if Faour had provided
testimony to create a fact issue on the existence of a trade secret, there is
nothing in the record to show that Schoenmann actually disclosed any trade
secrets or used them in any way.  Faour’s
affidavit testimony, which is Green Garden’s primary piece of summary judgment
evidence, did not address Schoenmann’s alleged disclosure of Green Garden’s
information to other vendors.   In fact,
the only evidence in the record pertaining to Green Garden’s misappropriation
of trade secrets allegation is Faour’s deposition testimony that he had no
information to support his belief that Schoenmann had shared Green Garden’s
information with other vendors or producers.
          Accordingly, we hold that the
trial court did not err in granting Schoenmann’s no-evidence summary judgment
motion on Green Garden’s claim for misappropriation of trade secrets.

We overrule Green Garden’s fourth and
fifth issues.

Fraud

In its sixth and seventh issues,
Green Garden argues that the trial court erred in granting Schoenmann summary
judgment on its fraud claim because it is not barred by the statute of frauds
and Green Garden is entitled to discovery regarding Schoenmann’s lost profits
to seek the remedy of “profit disgorgement.”

If the statute of frauds bars Green
Garden’s claim for benefit-of-the bargain damages resulting from the alleged
breach of contract, then Green Garden is similarly precluded from seeking its
benefit-of-the-bargain damages through its fraud claim.  See
Quigley v. Bennett, 227 S.W.3d 51, 54 (Tex. 2007); Baylor Univ. v. Sonnichsen, 221 S.W.3d 632, 636 (Tex. 2007).  Green Garden does not challenge this
point.  Rather, it argues that it is
entitled to seek the disgorgement of Schoenmann’s profits as a remedy for
Schoenmann’s alleged fraud.  However, as
Green Garden admits, the record contains no evidence of Schoenmann’s
profits.  Thus, the trial court could
have properly granted Schoenmann’s no-evidence summary judgment motion on Green
Garden’s fraud claim on the ground that Green Garden failed to present any
evidence of a viable measure of damages for its fraud claim.  Tex.
R. Civ. P. 166a(i).    

Green Garden, recognizing this
evidentiary deficiency, asks us to remand the case to the trial court to allow
for discovery on Schoenmann’s profits. 
Green Garden asserts that the lack of evidence in support of its
disgorgement claim is attributable to the fact that, “pending a ruling on
summary judgment, the [trial] court did not allow discovery of Schoenmann’s
profits from the HISD Contract.”  Green Garden
notes that in a motion for continuance included with its summary judgment
response, it asked the trial court to continue the hearing on Schoenmann’s
summary judgment motion because “necessary discovery had not been
completed.”  

The trial court signed its summary
judgment order disposing of Green Garden’s fraud claim on July 9, 2009 and its
final judgment on September 22, 2009. 
There is nothing in the record indicating whether the trial court ever
ruled on either Green Garden’s motion for continuance or its motion to compel
information on Schoenmann’s profits. 
Within its summary judgment response, Green Garden represented that the
motion to compel had been set for hearing on March 11, 2009.  Without anything in the record to reflect
that the trial court ruled on these two matters, or refused to rule on these
matters, there is nothing for us to review. [6]  See
Tex. R. App. P. 33.1.  

Additionally, although the trial
court’s orders pertaining to discovery are not contained in the record before
us, Green Garden filed its amended petition adding its fraud claim in September
2008.  According to representations in
the summary judgment briefing, the trial court had extended the discovery
deadline at least once until March 15, 2009. 
Even construing Green Garden’s appellate complaint liberally, based upon
this record, we cannot say that the trial court granted Schoenmann’s
no-evidence summary judgment before “an adequate time for discovery” had
passed.  See Tex. R. Civ. P.
166a(i).  Because Green Garden presented
no evidence in support of its claimed damages with regard to its fraud claim,
and because the record supports a finding that adequate time for discovery had
passed at the time the trial court granted summary judgment, we hold that the
trial court did not err in granting Schoenmann’s no-evidence summary judgment
on Green Garden’s fraud claim.

We overrule Green Garden’s sixth and
seventh issues.

Conclusion

          We
affirm the judgment of the trial court.

 

 

 

                                                                             Terry
Jennings

                                                                             Justice

 

Panel consists of Justices Jennings, Alcala,
and Massengale.

 

 











[1]           See Tex. Bus. & Com. Code Ann. § 2.201 (Vernon 2009).

 





[2]        See id. § 26.01 (Vernon 2009).





[3]               Green
Garden does not directly argue that any of the statutory exceptions to section
2.201 should apply, and instead suggests that we should recognize, in addition
to these exceptions, a more expansive common law partial performance doctrine
that would save its alleged agreement with Schoenmann from the statute of
frauds.  Green Garden asserts that a
“majority of jurisdictions considering this issue have held the partial
performance doctrine is applicable, at least with respect to indivisible
contracts, for sales of goods of more than $500.”  First, the statutory exceptions in section
2.201 provide remedies for parties who, among other things, specially
manufacture goods or provide goods that have been received and accepted.  Tex.
Bus. & Com. Code Ann. § 2.201(c)(1), (3).  Thus, section 2.201 already contemplates some
measure of relief for a party invoking a partial performance defense.  However, none of the statutory exceptions
apply to Green Garden’s alleged contract with Schoenmann because Green Garden
is not seeking to recover for any goods that is has provided, but instead is
seeking to compel Schoenmann to purchase goods from it in excess of $500 for a
minimum one year term.  Second, to the
extent other jurisdictions have adopted a broader partial performance
exception, there is no Texas authority for doing so, and we decline to adopt
such an exception on these facts.  Third,
the majority of authorities cited by Green Garden in support of a broader
common law partial performance exception arise from the factually
distinguishable scenario involving a partial or installment payment for an
indivisible good, like a car or boat.  See, e.g., Thomaier v. Hoffman Chevrolet,
Inc., 410 N.Y.S.2d 645 (N.Y. App. Div. 1978). 

 





[4]           Schoenmann
also argued that it was entitled to summary judgment on Green Garden’s quantum
meruit claim because the law prohibits recovery under quantum meruit to a party
who provides services or goods merely “in hopes of obtaining a future business
relationship” and, “as a matter of law,” Green Garden had no reasonable
expectation of “cash compensation” for materials or services furnished prior to
HISD awarding the contract.  See Peko
Oil USA v. Evans, 800 S.W.2d 572, (Tex. App.—Dallas 1990, writ denied).   However, as noted above, the Texas Supreme
Court has made clear that an expected payment need not be monetary and may be
in “any form of compensation.”  Vortt Exploration Co. v. Chevron U.S.A.,
Inc., 787 S.W.2d 942, 945 (Tex. 1990). 
In Vortt, the plaintiff
seeking quantum meruit recovery had furnished certain information to the
defendant “with the expectation that a joint operating agreement would be
reached.”  Id.  The court noted that the
parties had negotiated for four years trying to reach a joint operating
agreement and the plaintiff presented testimony that it had shared the
confidential information based only upon the belief that such an agreement
would be reached.  Id.  Thus, the reasoning of Vortt supports Green Garden’s assertion
that, in certain circumstances, a party that provides services with the
expectation of entering into a future business agreement may seek recovery of
the value of those services under a claim for quantum meruit, provided that
party presents evidence in support of all other elements of the claim.





[5]        A plaintiff seeking quantum meruit recovery must
introduce evidence regarding the value of services it provided.  LTS
Group, Inc. v. Woodcrest Capital, L.L.C., 222 S.W.3d 918, 920–921 (Tex. App.—Dallas
2007, no pet.).  Plaintiffs have
satisfied this burden in other quantum meruit cases by providing specific
testimony about the amount of compensation to which they would be entitled for
the services rendered. See, e.g., Lamajak,
Inc. v. Frazin, 230 S.W.3d 786, 795–96 (Tex. App.—Dallas 2007, no
pet.).  Thus, a plaintiff seeking quantum
meruit recovery must present evidence on the value of services it provided,
i.e., a restitution measure of damages, rather than evidence of damages based
upon any alleged benefit of an expected bargain.      





[6]           Schoenmann
filed its summary judgment motion on Green Garden’s fraud claim on April 3,
2009 and Green Garden filed its response on May 1, 2009.  The trial court’s order granting summary
judgment, signed on July 9, 2009, contains a recital that it heard the motion
on June 15, 2009, apparently after the setting on the motion to compel.