

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-22-00129-CV
_____

TERESA VON ILLYES, APPELLANT

V.

CARY ROLFING, LAURA ROLFING, AND KENNETH ROLFING, APPELLEES

On Appeal from the 17th District Court
Tarrant County, Texas[1]
Trial Court No. 017-311724-19, Honorable Melody Wilkinson, Presiding

March 28, 2023

MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellant Teresa Von Illyes appeals from the jury verdict and judgment in favor of the Rolfings on claims arising from the remodel of the Rolfings' home. We affirm in part and reverse and render in part.

---

[1] Pursuant to the Texas Supreme Court's docket equalization efforts, this case was transferred to this Court from the Second Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of the Second Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

BACKGROUND

In June of 2019, Cary and Laura Rolfing, brother and sister, sought bids from contractors to renovate and remodel a home owned by their father, Kenneth Rolfing.[2] The home was rundown and in poor condition. The Rolfings received a bid from Teresa Von Illyes and John Barton, d/b/a Clearfork General Construction. The Rolfings entered into a contract with Clearfork. The contract price was $67,150 and called for a six-week time frame for completion. The contract required payments by the Rolfings of "one third of the total project costs up front with the second payment at time of one[-]third completion and the final payment at time of completion of project." The contract provided, among other things, that Clearfork would replace interior and exterior doors and windows including trim work; replace wood flooring; remove and install new sheetrock; repair wall cracks; paint walls and ceilings throughout; remove/replace kitchen cabinets and countertops; remove/replace appliances (oven, refrigerator, dishwasher); install new light switches, covers, and plugs throughout; and install thermostats and smoke detectors. Although the contract generally describes the work to be done, the contract does not itemize the cost of any work to be performed. Von Illyes hired her father, Floyd Stober, to oversee the project.

The Rolfings made the first payment on the contract before work began. Cary testified that there were problems within the first two weeks because "there was no one there to do the work." He expected the project to be completed by "mid to late July at the

---

[2] Because the appellees share the same last name, when referring to them individually, we will refer to them by their first names.

latest." Soon after construction began, changes were made outside the contract for roof repair ($7,000) and ductwork ($1,950). As of mid-July, the renovation was one-third complete, and the Rolfings had paid Von Illyes and Clearfork a total of $44,200 on the contract, plus an additional $8,950 for the roof and ductwork.

Through text messages and emails to Von Illyes, Cary expressed his frustration that construction was behind schedule and displeasure with the workmanship of the project as a whole. In early August, Cary made a "punch list" of items that he and Laura had identified as requiring completion or correction to finish the project. Cary also put blue tape on those areas that needed to be repaired or repainted.

Separately, both Von Illyes and Barton sought final payment for the project from Cary. Cary refused to make the final payment because of his complaints that the work was neither complete nor satisfactory. Von Illyes filed a mechanic's lien against the property on August 26. On August 28, Barton texted Cary a picture of a mechanic's lien that Barton had filed. After learning that liens had been filed, Cary told the workers at the house to take their tools and leave. Cary emailed Von Illyes to "cease work" until the matter was resolved.

The Rolfings sued Von Illyes, Barton, and Clearfork seeking release of liens, damages for breach of contract and deceptive trade practices, and attorney's fees. Von Illyes and Barton each filed a counterclaim alleging breach of contract by the Rolfings for nonpayment. Von Illyes also sought recovery in quantum meruit.

Cary testified to a host of problems with the workmanship and quality of the work performed. More than 130 photographs were admitted into evidence depicting the poor

3

workmanship and substandard quality of the remodel job performed by Clearfork. Cary testified that the project was not completed by August 26, 2016, and less than ten percent of the items on the punch list had been completed when the workers left.

Von Illyes testified that electrical, plumbing, and structural issues, among other things, caused delays with the project. She acknowledged that the Rolfings paid $44,200 plus the amount agreed upon for the roof and duct work, but still owed approximately $23,000 on the contract. She admitted that they are entitled to an offset of $2,000 for some things that were not finished. However, she testified that the project was complete as of August 26. Von Illyes disputed that Cary formally gave her a punch list. She claimed that Clearfork prepared its own punch list, but Cary kicked the workers off the property before the work on the list could be completed. Von Illyes testified that Cary did not show up for the final walkthrough. She also noted that, "fixing or repairing blue-tape items after a final walkthrough is not part of the completion of a project."

The case was tried to a jury which found that Clearfork breached the contract and failed to comply with the implied warranty of good and workmanlike performance. The jury awarded the Rolfings damages in the amount of $27,150[3] and $6,000 in legal fees. Von Illyes filed a motion for judgment notwithstanding the verdict. The trial court entered

---

[3] The Rolfings brought claims for breach of contract and violations of the Texas Deceptive Trade Practices Act. The jury awarded the Rolfings identical damages of $25,150 for loss of benefit of the bargain and $2,000 for cost of repair in response to Question 2 (damages for breach of contract) and Question 7 (damages for violation of the D.T.P.A.). The Rolfings failed to obtain the necessary jury findings in their favor as to the alleged violations of the Texas Deceptive Trade Practices Act. The trial court's judgment awarded the Rolfings total damages of $27,150 plus attorney's fees and costs. Von Illyes has raised no challenge to the jury's findings related to liability for breach of contract.

judgment on the jury's verdict. After her motion for new trial was overruled by operation of law, Von Illyes brought this appeal. Barton did not appeal the trial court's judgment.

In her first two issues, Von Illyes challenges the legal and factual sufficiency of the evidence to support the award of damages in favor of the Rolfings. In her third issue, she contends that the jury's determination that she failed to complete compensable work for which she was not compensated is against the great weight of the evidence.

## STANDARD OF REVIEW

Under a legal sufficiency standard, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable factfinder could not disregard that evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A legal sufficiency challenge may only be sustained when the record discloses (a) a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (d) the evidence conclusively establishes the opposite of the vital fact in question. *Id.* at 810. Evidence does not exceed a scintilla if it is so weak as to do no more than to create a mere surmise or suspicion that the fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

In a factual sufficiency review, the appellate court considers all of the evidence in the record in a neutral light and sets aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). When an appellant challenges an adverse

5

finding on an issue on which it did not have the burden of proof at trial, we set aside the verdict only if the evidence supporting the finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Reliant Energy Servs., Inc. v. Cotton Valley Compression, LLC,* 336 S.W.3d 764, 782 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

## ANALYSIS

Issue One: Benefit of the Bargain Damages

In her first issue, Von Illyes challenges the jury's answer to Question No. 2, which asked jurors to determine the sum of money, if any, that would fairly and reasonably compensate the Rolfings for their actual damages. In subpart (a) of Question No. 2, the court instructed the jury to consider as an element of damages, the loss of the benefit of the bargain, defined as

> the difference, if any, between the value of the renovation and remodel job agreed to by the parties and the value of the renovation and remodel job performed by [Clearfork]. The difference in value, if any, shall be determined at the time and place the renovation and remodel job was performed.

This measure of damages is known as the "benefit of the bargain" measure. *Leyendecker & Assocs. v. Wechter,* 683 S.W.2d 369, 373 (Tex. 1984) (op. on reh'g). The jury's answer was "$25,150" and Von Illyes's first issue contends that there is no evidence to support this amount.

The jury was presented with evidence that the value of the services to be provided by Clearfork, according to the contract, was $67,150. The Rolfings were to submit three payments, representing "one third of the total project costs up front with the second

6

payment at time of one[-]third completion and the final payment at time of completion of project." The Rolfings made the first payment before the work began. The second payment was made mid-July. The final payment of $22,950 was not due until the completion of the project. Cary testified that he made payments to Von Illyes for work performed under the contract totaling $44,200, but that he did not make the final payment because the project was not completed. After the Rolfings made the payment in July, Clearfork continued to work on the property. There is evidence that the Rolfings received materials, labor, and appliances as dictated by the contract, but there was no testimony presented as to the nature of the work completed, when the work was completed, the value of that work, or the cost of materials provided by Clearfork at any stage of the contract.[4]

The typical statement of the benefit-of-the-bargain measure is that it represents the difference between the value expected from the contract and the value received by the nonbreaching party. *Walker & Assocs. Surveying, Inc. v. Austin,* 301 S.W.3d 909, 919 (Tex. App.—Texarkana, 2009, no pet.). When, as here, the parties contract for a specific project to be completed for a specified price, the value expected is a *completed project* for the stated price. The Rolfings contracted with Clearfork for a stated price of $67,150, although they only paid $44,200 of that amount. The jury was required to determine its award also based, in part, on the value of the renovation and remodel performed by Clearfork. However, there is no evidence to support that critical part of the

---

[4] Cary testified that he was asking the jury to award $44,200—the amount the Rolfings paid to Clearfork. However, this is not a proper amount of damages because the Rolfings did not plead for rescission of the contract.

7

benefit-of-the-bargain equation—the value of the renovation and remodel work that Clearfork performed. Because no evidence was admitted regarding the value of the work that was performed by Clearfork, the jury could not calculate the benefit-of-the-bargain damages suffered by the Rolfings.

Because the jury could not calculate the amount of damages according to the method prescribed in the jury question, we hold that the evidence is legally insufficient to support $25,150 in loss of the benefit of the bargain. Because we so hold, we need not address Von Illyes's factual sufficiency complaint. *See* TEX. R. APP. P. 47.1.

Issue 2: Cost to Repair

In her second issue, Von Illyes contends that there is a complete absence of evidence that the Rolfings were damaged in the amount of $2,000 for the reasonable cost to repair the property.

The court's charge defined "cost to repair" to include "reasonable and necessary costs to finish or repair items on the 'punch list' or items noted for repair by blue tape." At the charge conference, Von Illyes objected to this element of damage because there was no evidence of "any blue tape repairs," and further objected on the basis that "[the Rolfings] hasn't paid for that cost for which the evidence was given."

Because the Rolfings sought to recover remedial damages, they were required to prove the cost to complete or repair the work agreed to, less the unpaid balance on the contract price. *McGinty v. Hennen*, 372 S.W.3d 625, 627 (Tex. 2012) (per curiam) (explaining that one measure of damages for "breach of a construction contract [is] remedial damages, which is the cost to complete or repair less the unpaid balance on the

8

contract price . . . .").  In addition, the Rolfings were required to prove that the damages sought were reasonable and necessary.  *Id. (*citing *Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 200 (Tex. 2004) (per curiam)).[5]  To do so, the plaintiff must show more than the nature of the injuries, the character of and need for the services rendered, and the amounts charged therefore.  *Id.* (citing *Dallas Ry. & Terminal Co. v. Gossett,* 294 S.W.2d 377, 383 (Tex. 1956)).

The Rolfings presented testimony that the remodeling work performed by Clearfork was deficient.  Cary testified that the exterior doors and windows were defectively installed; the windows were not properly caulked and sealed; the floor in the garden room was buckled; the tile backsplash was unlevel; the cabinets were not flush with the wall; the sink fell and damaged the marble countertop; painted doors were chipped and peeling; and fifty percent of the wall cracks were not repaired.  After Clearfork left the property, Laura put in new flooring in the kitchen that was damaged when the appliances were installed, and the dining room floor remodel was completed by installing new subflooring and flooring.  The Rolfings submitted photographic evidence that supported an injury caused by Clearfork.  However, the Rolfings did not testify to any out-of-pocket expenses incurred to repair the deficient work or submit any evidence of what it would cost to repair the deficiencies.  Cary testified that he made a "punch list" of items that he and Laura had identified as requiring completion or correction to finish the project.  Cary

---

[5] Although there was evidence of an unpaid balance on the contract, the jury charge failed to properly instruct the jury to deduct any unpaid balance on the contract price and no party objected to the omission.  *See, e.g., Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex. 2000) (absent preserved meritorious complaint of charge error, challenges to sufficiency of evidence supporting jury findings are evaluated in light of charge as submitted).

also put blue tape on the items that needed to be repaired or repainted. However, there was no testimony that the Rolfings paid any amount for reasonable and necessary repair costs. Moreover, there was no evidence presented of what items were on the punch list or marked by blue tape, nor did the Rolfings provide a repair estimate for those items.

Stober acknowledged that all of the items on the punch list were not complete when Cary stopped the work. Von Illyes agreed with Stober's testimony that the items remaining to be completed under the contract could be done for $2,000. Von Illyes testified that the Rolfings were due an offset of "at most, $2,000" for items that Stober was unable to complete before he was asked to leave the property. This amount does not include the kitchen sink repair and damaged marble countertop. However, no evidence was presented regarding the cost of these repairs. According to Von Illyes, "fixing or repairing blue-tape items after a final walkthrough is not part of the completion of a project."

The evidence supports a cost of $2,000 to finish the contract based on Clearfork purchasing and installing a ceiling fan, light fixture, and smoke detectors, and repainting and caulking around the windows. However, this amount does not equate to an element of damage recoverable by the Rolfings for "cost to repair." If anything, this amount would be credited against the total contract price owed by the Rolfings. Further, there was no evidence of what items were noted on the punch list or the amount of any "blue tape" repairs. A party seeking recovery for the cost of repairs must prove their reasonable value. *Ebby Halliday Real Estate, Inc. v. Murnan,* 916 S.W.2d 585, 589 (Tex. App.—Fort Worth 1996, writ denied). Consequently, the evidence is insufficient to support an award of $2,000 for cost to repair.

10

<u>Take-Nothing Judgment/Attorney's Fees</u>

In a subissue, Von Illyes also challenges the jury's answer awarding attorney's fees to the Rolfings. She argues that a take-nothing judgment is appropriate with regard to damages under both the benefit-of-the-bargain and cost-of-repair theories. As set forth in our analysis of the first two issues, we agree with Von Illyes. Because the evidence does not support an award of actual damages, the Rolfings cannot recover the $6,000 in attorney's fees awarded to them. *See Green Int'l Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex. 1997); *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 905 (Tex. 1985).

<u>Issue 3: Claim for Quantum Meruit</u>

Von Illyes's third issue is premised on her equitable claim for quantum meruit. She contends that the jury's determination that she failed to complete compensable work for which she was not compensated is against the great weight of the evidence.

Von Illyes bore the burden to prove all elements of her claim for quantum meruit. To recover under a theory of quantum meruit, Von Illyes had to prove that: (1) Clearfork rendered valuable services or furnished valuable materials to the Rolfings; (2) the Rolfings accepted, used, and benefitted from the services or materials; and (3) the Rolfings were reasonably notified that Clearfork expected to be compensated for the services or materials. *See Vortt Expl. Co., v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex. 1990). The right to recover under a theory of quantum meruit is independent of any contract. *Id.* The claimant is required to produce evidence of the correct measure of damages in order to recover on a quantum meruit claim. *LTS Grp., Inc. v. Woodcrest Capital, L.L.C.,* 222 S.W.3d 918, 920-21 (Tex. App.—Dallas 2007, no pet.). The measure

11

of damages for recovery on a quantum meruit claim is the reasonable value of the work performed and the materials furnished. *Hill v. Shamoun & Norman, LLP,* 544 S.W.3d 724, 733 (Tex. 2018). A party generally cannot recover under a quantum meruit claim when there is a valid contract covering the services or materials furnished. *Id.*

In support of her claim for quantum meruit, Von Illyes points to a host of services she provided that were not subject to complaint by the Rolfings including the installation of new appliances and blinds and the removal of carpet, a toilet, appliances, cabinets, and windows. Yet, these services were included in the scope of work outlined in the contract. Further, Von Illyes did not present evidence of the value of these or any other services or materials provided outside the contract or the value of compensable work for which she was not compensated. There was no showing by Von Illyes that the value of the work she provided was greater than the amount the Rolfings paid. *See Knight Renovations, LLC,* v. Thomas, 525 S.W.3d 446, 455 (Tex. App.—Tyler 2017, no pet.).

The work for which Von Illyes sought recovery was included in the scope of work contemplated within the parties' agreement. As such, Von Illyes was not entitled to recover an award of quantum meruit damages for this work. *See Lott v. Brown,* No. 12-17-00093-CV, 2018 Tex. App. LEXIS 9676, at *18 (Tex. App.—Tyler Nov. 28, 2018, no pet.) (mem. op.). Accordingly, we overrule issue three.

## CONCLUSION

We sustain Von Illyes's first two issues. We reverse the trial court's judgment in favor of the Rolfings and render a take-nothing judgment on the Rolfings' damage awards.

We overrule issue three and affirm the jury's decision on Von Illyes's quantum meruit claim.

Judy C. Parker
Justice