# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-18-00538-CV

---

**Language People, Inc. and Deaf Nation Enterprises, Inc., Appellants**

**v.**

**Joel Barish, Jed Barish, and DeafNation, Inc., Appellees**

---

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-16-000042, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

This dispute arises from a proposed corporate merger gone awry. Appellants Language People, Inc. and Deaf Nation Enterprises, Inc. (Enterprises)[1] challenge the district court's final judgment adopting the jury's findings of fraud and breach of contract and awarding damages and attorneys' fees to appellees Joel Barish, Jed Barish, and DeafNation, Inc.

---

[1] Although Enterprises is named as an appellant in the notice of appeal, it makes no independent arguments on appeal. Indeed, the jury's liability findings and the district court's damages award were against Language People, not Enterprises—Enterprises was named in the final judgment only in the context of a declaration that appellees' agreement with appellants was void and of no effect, in a provision related to a pretrial sanctions award made against both appellants, and in provisions addressing appellate attorney's fees in the event of an unsuccessful appeal by one or both appellants. Further, although the brief is filed on behalf of both Language People and Enterprises, in contesting liability, the arguments largely assert that Language People cannot be held liable for contractual obligations undertaken by Enterprises. With regard to the pleadings and arguments asserted, we will refer to appellants collectively as "Language People" and will only distinguish between the two entities when it is necessary to do so.

Appellants dispute the jury's findings and assert that the district court made multiple mistakes of law. We will affirm the district court's judgment.

## BACKGROUND

Language People is a California corporation that provides commercial interpretation and translation services, and Enterprises is a wholly owned subsidiary of Language People. DeafNation is a Texas corporation jointly owned by brothers Joel and Jed Barish. DeafNation produces "Expos," conventions held throughout the United States for individuals with hearing impairments. In January 2015, Language People entered into a Memorandum of Understanding (Memorandum) with the Barishes and DeafNation under which Language People agreed that it would purchase most of DeafNation's assets and that it would create Enterprises, a new subsidiary. The parties also agreed that the Barishes would serve as officers of Enterprises "or one of the other anticipated newly formed subsidiary corporations as deemed appropriate," each receiving $100,000 a year and "the same benefits as Executives are offered at Language People, Inc. at this time." Under the Memorandum, which was signed by Language People and the Barishes on behalf of DeafNation, "[t]he rights to the assets of sale by DeafNation shall belong to Language People and it will ultimately put those assets into" Enterprises. In April 2015, Enterprises, Joel Barish as CEO of DeafNation, and the Barishes as individuals signed a Purchase Agreement setting out the specifics of Enterprises' purchase of DeafNation's assets. Also in April 2015, Enterprises and the Barishes signed separate Employment Agreements providing each brother a $100,000 base salary and other compensation and benefits. We will refer to the four contracts collectively as the Agreement.

2

According to the Barishes, Language People promptly created the Enterprises entity. It also applied for a trademark of the DeafNation logo, listing itself as owner, without telling the Barishes or DeafNation. The Barishes testified that Jed moved to California to begin working for Language People while Joel remained in Texas to continue coordinating the Expos and to oversee the transfer of DeafNation's assets to Enterprises. Language People, however, never completed its purchase of DeafNation's assets or compensated the Barish brothers. Jed resigned after three months in California, at which point Language People notified him that he was in breach of his contract and threatened to enforce a non-compete clause against him.

Appellants alleged that the Barish brothers commingled personal and corporate assets and diverted tens or hundreds of thousands of dollars from the corporate bank accounts for personal use; never provided the financial documents necessary to proceed with the Agreement; and refused to allow Language People to participate in the Expos. Language People threatened to pursue claims for breach in August of 2015, asserting that the Barishes had removed corporate property from the Austin offices and that Jed Barish was planning to start a new competing entity. Language People's executives instructed Joel to discontinue any communication with his brother regarding Language People, Enterprises, and DeafNation.

After a year passed with no significant progress under the Agreement, the Barish brothers and DeafNation filed suit in Travis County, seeking damages and declaratory relief, alleging claims for fraudulent inducement and breach of the Agreement. Language People countered with claims sounding in contract, tort, and equity. The case was tried to a jury with

the assistance of several American Sign Language translators.[2] The jury found Language People liable for breach and fraud and found no liability on the part of the Barish brothers or DeafNation. Based on the jury's findings and appellees' election of remedies, the district court rescinded the contract, awarding appellees over $150,000 in restitution damages and $334,741.25 in attorneys' fees. Language People now appeals.

## DISCUSSION

Language People argues that there is no evidentiary support for the adverse jury findings against it and that the district court made a number of erroneous rulings. We will consolidate the arguments for discussion. *See* Tex. R. App. P. 47.1; *Gene Hamon Ford, Inc. v. David McDavid Nissan, Inc.*, 997 S.W.2d 298, 304 n.9 (Tex. App.—Austin 1999, pet. denied).

**Denial of Continuance**

We first address Language People's argument that the district court improperly denied its request for continuance of trial. We will not disturb an order denying a motion for continuance unless the trial court has committed a clear abuse of discretion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). A trial court abuses its discretion when it "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id*. In deciding whether a trial court has abused its discretion in denying a motion for continuance related to discovery, we consider the length of time the case was on file, the

---

[2] Both Joel and Jed have significant hearing loss and communicate primarily through ASL.

4

materiality and purpose of the discovery sought, and whether the party had exercised due diligence to obtain the discovery. *Id*.

On February 20, 2018, Language People filed a motion for continuance, its second,[3] seeking delay of a February 26, 2018 trial setting. Language People asserted that in a December 2017 hearing, the district court had orally denied Language People's motion to compel but had not yet signed an order to that effect. Language People stated that it intended to seek review of that ruling through mandamus in this Court and that a continuance was necessary because it could not "proceed to trial or effectively pursue appellate review of the [district court's] rulings in the absence of a signed and duly entered Order on its Motion to Compel." On February 22, two separate orders were signed by different trial judges—one ruling on the motion to compel, and the other denying Language People's second motion for continuance.[4] On February 26, Language People filed a third motion for continuance, asserting that a continuance was warranted because it had filed in this Court a petition for writ of mandamus related to the verbal rulings on the motion to compel.[5] At a pretrial hearing held that same day, the district court denied Language People's third motion for continuance, stating that counsel should have contacted the court to get a signed order on the motion to compel; that the order on the motion to

---

[3] Language People had already received a continuance of a January 2018 trial setting.

[4] Under Travis County's revolving docket system, the judge who heard the motion for continuance was not the judge who had heard and ruled on the earlier motion to compel. *See* Travis County Loc. R. 3.1.

[5] Language People was apparently unaware that an order on the motion to compel had been signed on the same day as the order denying its second motion for continuance. We denied Language People's petition for writ of mandamus, *see In re Language People, Inc.*, No. 03-18-00112-CV, 2018 WL 1056710 (Tex. App.—Austin Feb. 26, 2018, orig. proceeding) (mem. op.), and Language People does not challenge the denial of its motion to compel in this appeal.

compel signed on February 22 was the same order that counsel for both sides had signed as to form; that this Court had denied Language People's petition for writ of mandamus that morning; and that the rulings on the motion to compel appeared to be correct. Based on this record, Language People has not shown that the district court abused its discretion in denying the second and third requests for continuance. *See id*. We overrule the issue.

**Findings of Liability**

Language People contends that the district court erred in entering judgment against it, relying largely on an argument that the contracts obligate Enterprises—not Language People—to purchase DeafNation's assets and to pay the Barishes.

"Under generally accepted principles of contract interpretation, all writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer to one another." *Burlington Res. Oil & Gas Co. v. Texas Crude Energy, LLC*, 573 S.W.3d 198, 208 (Tex. 2019) (quoting *DeWitt Cty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999)). That rule may apply even if the various contracts are not between the same parties. *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981); *Miles v. Martin*, 321 S.W.2d 62, 66 (Tex. 1959); *Great Atl. Life Ins. Co. v. Harris*, 723 S.W.2d 329, 333 (Tex. App.—Austin 1987, writ dism'd).

There is no genuine dispute here that the Memorandum, the Purchase Agreement, and the Employment Agreements all pertain to the same transaction—i.e., Language People's purchase of DeafNation's assets—and, indeed, Language People asserts that the Memorandum, the Purchase Agreement, and the two Employment Agreements are the "four agreements that

6

formed the transaction." Instead, Language People argues that clauses in the Purchase Agreement and Employment Agreements extinguish any other obligations to which Language People might be held and that "well established rules pertaining to the construction of multiple contracts that comprise a transaction dictate that the [Purchase Agreement] and Employment Agreements control to the extent of any conflict" with the terms of the Memorandum.

The Purchase Agreement states, "This Agreement . . . supersede[s] all prior discussions and agreements between the parties with respect to the subject matter hereof and thereof, and contain the sole and entire agreement between the parties hereto with respect to the subject matter hereof and thereof." The Employment Agreements similarly provide, "Unless expressly provided hereunder, this Agreement constitutes the total and complete agreement of the parties regarding Employee's employment and supersedes all prior understandings and agreements, and there are no other representations, understandings or agreements." However, Language People was not party to either the Purchase Agreement or the Employment Agreements—Enterprises executed those contracts pursuant to the terms of the Memorandum. Thus, those clauses bind Enterprises but do not extinguish Language People's obligations under the Memorandum.

To the extent that Language People relies on the merger doctrine, which provides that "prior or contemporaneous agreements between the same parties, concerning the same subject matter, are absorbed into a subsequent agreement," *Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 869 (Tex. App.—Austin 2006, pet. granted, judgment vacated w.r.m.), under that doctrine, the latter contract "must be between the *same* parties as the first, must embrace the *same* subject matter, and must have been so intended by the parties,"

7

*Fish v. Tandy Corp.*, 948 S.W.2d 886, 898-99 (Tex. App.—Fort Worth 1997, writ denied); *see Spring Windows*, 184 S.W.3d at 869. As noted, Language People was not party to the later three contracts containing the merger clauses, nor do the four contracts comprising the Agreement conflict so that Language People's obligations in the Memorandum may not be enforced. *See The Courage Co. v. The Chemshare Corp.*, 93 S.W.3d 323, 333 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (in construing multiple documents together, courts may "in appropriate instances" construe documents as if "part of a single, unified instrument," and later contract will prevail "to the extent that they are inconsistent"; portions of first contract that do not conflict with second may be enforced).

In executing the Memorandum, signatories Language People, DeafNation, and the Barishes "acknowledge[d] and agree[d] that all of the terms contained in this [Memorandum] are binding and enforceable" against each party. The Memorandum sets forth the essential terms of the asset purchase and the Barishes' employment and expressly anticipates the execution of the Purchase Agreement and the Employment Agreements. Language People was bound to comply with the Memorandum's contractual provisions, which specifically describe Language People's obligations with regard to the Barishes and DeafNation. We overrule Language People's assertions that its liability was extinguished by the merger clauses contained in the three later agreements to which it was not a party.

**Sufficiency of the Evidence**

Language People next contends the evidence is legally and factually insufficient to support the jury's findings: 1) that Language People breached the Agreement; 2) that

8

Language People committed statutory and common law fraud; and 3) that DeafNation and the Barishes were not unjustly enriched at Language People's expense.

"When a party attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate on appeal that no evidence supports the adverse finding." *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). With respect to findings on issues on which the party had the burden of proof at trial, it must "demonstrate that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In conducting our legal-sufficiency review, "we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so." *Peña*, 442 S.W.3d at 263 (quoting *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009)). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). As for factual sufficiency, if the party did not have the burden of proof, it must show that there is insufficient evidence to support the adverse finding. *In re Estate of Matthews III*, 510 S.W.3d 106, 117 (Tex. App.—San Antonio 2016, pet. denied). If it had the burden of proof, the party must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem.*, 46 S.W.3d at 242. We consider all the evidence and will only reverse "if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id*.

### *Sufficiency as to the Breach of Contract Claims*

Language People asserts that there is no evidence to support the jury's finding that it breached the Agreement with DeafNation and the Barish brothers. *See Peña*, 442 S.W.3d at 263. A party breaches a contract when it fails or refuses to do something it has promised to do. *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

The jury answered "yes" when asked:

> Do you find that the Memorandum of Understanding, the Asset Purchase and the Employment Agreements together constitute an [A]greement for:
>
> (1) Language People, Inc. to purchase the assets of DeafNation, Inc;
>
> (2) Language People, Inc. to employ Joel Barish and Jed Barish, each at an annual salary of $100,000; and
>
> (3) DeafNation, Inc. to transfer certain assets and properties to Language People, Inc on agreed upon price terms?

The jury then answered "yes" when asked whether Language People had failed to comply with the Agreement.

Language People argues that these questions must be answered in the negative because only Enterprises was required to purchase DeafNation's assets and employ the Barishes, insisting that "the agreements unambiguously placed" those obligations on Enterprises, not on Language People. However, as explained above, Language People cannot use the merger clauses in the Purchase Agreement and Employment Agreements to relieve itself of the obligations it undertook in the Memorandum.

Aside from its merger-clause arguments, Language People does not assert that there is no evidence that it breached the Memorandum's provisions that it would, among other things, pay $300,000 in exchange for DeafNation's assets; pay the Barishes base salaries of

10

$100,000 a year, along with "the same benefits as Executives are offered at Language People," for a period of at least five years; and assume DeafNation's lease payments. The closest such statement is an assertion in its argument against the jury's findings of fraud that "if Appellees are now suggesting that [Language People] did not do something [it] promised to do in the written agreements, then there is no evidence in the record or valid finding showing [Language People] failed to perform a promise it made in the written agreements." However, even if Language People had argued against the sufficiency of the evidence, on this record, we would hold that legally and factually sufficient evidence supports the jury's findings of breach: the Barishes testified that they never received the salaries, benefits, or stock options promised them and that Language People never paid the bulk of the $300,000 asset purchase price or assumed payment of DeafNation's lease, and financial documents and email correspondence submitted as evidence corroborate this testimony. A reasonable juror could have determined that Language People failed to honor its promises, and we cannot say there is "no evidence" of Language People's breach. *See Peña*, 442 S.W.3d at 263.

We overrule Language People's challenge to the jury's finding that it breached the Agreement.

### *Sufficiency as to the Fraud Claims*

We next consider Language People's challenge to the jury's findings that Language People committed fraud. At trial, DeafNation and the Barish brothers argued that Language People's misrepresentations, including statements in the Memorandum, fraudulently induced them to enter into the Agreement, and the jury determined that Language People had committed statutory and common-law fraud. Under both statute and the common

11

law, a finding of fraud is predicated on the aggrieved party's justifiable reliance on a material misrepresentation. *Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 386 (Tex. App.—Houston [1st Dist.] 2012, pet. granted, judgm't vacated w.r.m.); *see* Tex. Bus. & Com. Code § 27.01(a) (defining statutory fraud); *JPMorgan Chase Bank, N.A. v. Orca Assets G.P.*, 546 S.W.3d 648, 653 (Tex. 2018) (defining common-law fraud). Language People challenges the evidence supporting this element, arguing that DeafNation and the Barishes could not justifiably rely on any representations that Language People would purchase the DeafNation's assets or hire the Barishes because "the written agreements expressly and unambiguously state that [Enterprises] (***not*** [Language People])" would purchase the assets and hire the brothers.

"Justifiable reliance usually presents a question of fact" unless the circumstances establish as a matter of law that reliance could not be justified. *Orca Assets*, 546 S.W.3d at 654. Language People contends that "no reasonable person could read the written agreements and plausibly believe any alleged representations" that Language People would pay the Barishes' salaries and benefits, purchase DeafNation's assets for $300,000, make DeafNation's RV payments, or "take care of other vague, indefinite, undefined and unidentified 'financial obligations,' 'networking resources,' or 'resources.'"[6] However, this argument relies on Language People's insistence that it is not liable under the Agreement—an argument we have already decided against it. We therefore overrule Language People's challenges related to the jury's findings of fraud.

---

[6] DeafNation and the Barishes also provided evidence that Language People had promised to continue sponsoring the Expos, to help find additional sponsors, and to assume loan payments on the Expo RV; that they relied on those promises in entering into the Agreement; and that after the parties executed the Agreement, Language People used DeafNation's intellectual property without permission, ceased paying for its Expo sponsorship, and began interfering with the Expos.

***Sufficiency as to Language People's Claim of Uncompensated Benefits***

Language People challenges the jury's response of "no" when asked whether Language People had provided uncompensated benefits to the Barishes or DeafNation, an issue on which it had the burden of proof. *See Dow Chem.*, 46 S.W.3d at 241-42 (describing legal- and factual-sufficiency review when party had burden of proof). Quantum meruit is an equitable remedy based upon an implied promise to pay for beneficial services rendered by the complaining party. *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018). The purpose of the doctrine is to "prevent a party from being unjustly enriched by retaining the benefits of the performance without paying anything in return." *Id*. (cleaned up). To recover under quantum meruit, a plaintiff must prove that: 1) it provided valuable services or materials to the defendant; 2) the defendant enjoyed the benefits of those services or materials; and 3) under the circumstances, the defendant should reasonably have known the plaintiff expected payment for those services or materials. *Id*. at 732-33.

Language People's entire appellate argument on this issue reads as follows:

> In response to [jury questions related to whether Language People should recover for unjust enrichment], the jury failed to return findings that [Language People] performed work for Appellees for which it was not compensated. The evidence proves conclusively that [Language People] performed such work and that it had a value of over $300,000. Alternatively, the jury finding was against the great weight and preponderance of the evidence. The Court should therefore reverse and render, or reverse and remand for a new trial if it does not reverse and render that Appellees take nothing.

(Record citations omitted.)

Language People cites as support to Defense Exhibit 57, a typewritten list of eleven Language People employees and the "amount of time spent on [DeafNation]," and to testimony from Lisa Wrench, Language People's chief executive. However, while Exhibit 57

13

might constitute evidence of the *value* of time and services expended related to the failed merger,[7] it provides no evidence of how those services inured to the benefit of DeafNation or the Barishes. Nor does Wrench's testimony demonstrate how these services benefitted DeafNation.

"To recover in quantum meruit, the plaintiff must show that his efforts were undertaken *for* the person sought to be charged; it is not enough merely to show that his efforts benefitted the defendant." *LTS Grp., Inc. v. Woodcrest Capital, L.L.C.*, 222 S.W.3d 918, 921 (Tex. App.—Dallas 2007, no pet.). "The expectation of a future business advantage or opportunity cannot form the basis of a cause of action for quantum meruit." *Id.* A fair-minded juror could have reasonably concluded that Language People undertook the asserted efforts primarily for its own benefit and that any services provided were of little or no value to appellees. The evidence is legally and factually sufficient to support the jury's finding. *See Dow Chem.*, 46 S.W.3d at 242. We overrule Language People's challenge to the jury's adverse finding on Language People's claim that it was entitled to compensation for work performed on behalf of appellees.

**Error in the Judgment**

Finally, Language People challenges the declaratory relief awarded in the judgment and contends the district court erred by rescinding the contract and in its calculation of restitution damages and attorneys' fees.

---

[7] Exhibit 57 states that Wrench spent 50% of her time on the merger for twelve consecutive months and, based on her salary, estimates a value of $45,000 for this work. The exhibit also lists expenses for "interpreters," "legal fees," travel expenses, and "$$$ into [DeafNation]," for a total estimated value of $338,340.00. Wrench said in reference to Exhibit 57, "These are all my hundred thousand dollar people [sic] and they all put in all this time . . . in anticipation of we were going to get this big contract and everything was going really well and there was going to be a lot of money."

### *Declaratory Relief*

Language People disputes the district court's declarations that Language People "failed to comply with the parties' [A]greement," "committed common law fraud," "committed statutory fraud with respect to the Agreement," and "failed to pay consideration owed under the Agreement." *See* Tex. Civ. Prac. & Rem. Code § 37.004(a) (describing when declaratory relief may be sought). Specifically, it argues that the "total lack of any valid supporting jury findings require[s] reversal of the declarations." We have already rejected Language People's arguments regarding the jury's findings underlying these declarations, and it has not identified any other alleged error in the declaratory relief provided by the district court. We overrule Language People's issues related to the district court's granting of declaratory relief.

### *Rescission*

Language People also challenges the district court's rescission of the Agreement. "Rescission is an equitable remedy that extinguishes legally valid contracts that must be set aside because of fraud, mistake, or other reasons in order to avoid unjust enrichment." *Cantu v. Guerra & Moore, Ltd.*, 328 S.W.3d 1, 8 (Tex. App.—San Antonio 2009, no pet.). Language People argues that "the unambiguous contract terms and a total lack of any valid supporting jury findings require reversal" of the rescission order. But as explained above, the record reflects sufficient evidence to support the disputed jury findings. The jury returned a finding that Language People committed fraud, and thus accepted DeafNation's arguments regarding fraudulent inducement of the Agreement. A fraudulently induced contract is generally voidable by the aggrieved party. *See Neese v. Lyon*, 479 S.W.3d 368, 380 & n.6 (Tex. App.—Dallas 2015, no pet.) (discussing doctrine and gathering authorities). Having prevailed on the claim of

15

fraudulent inducement, DeafNation and the Barishes were entitled to seek rescission of the Agreement, and the district court did not err in granting it.

*Monetary Award*

DeafNation and the Barishes elected to recover damages for rescission and restitution for fraud rather than for breach of the Agreement. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 345 (Tex. 2011) (describing election of remedies for party prevailing on claims of fraudulent inducement). Among other sums, the jury found that Language People was liable to the Barishes for $111,073.20 for salaries and health insurance, $52,695.74 as "the sums agreed to be turned over to Joel Barish and Jed Barish from the DeafNation, Inc. bank account," and $25,000 in unpaid Expo sponsorship fees. The district court awarded appellees $156,797.15 in damages, and Language People contends that in making that award, the court conflated damages caused by Language People's non-performance under the Agreement with restitution damages available as a remedy for fraud.

"Rescission is an equitable remedy and, as a general rule, the measure of damage is the return of the consideration paid, together with such further special damage or expense as may have been reasonably incurred by the party wronged on account of the contract." *Id.* at 345. "Complete and full justice is a fundamental doctrine of equity jurisprudence, and if damages, as well as rescission, are essential to accomplish full justice, they will both be allowed." *Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 843 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *Holland v. West Bank & Tr. Co.*, 118 S.W. 218, 218 (Tex. App.—Austin 1909, no writ)). "The principle that underlies the remedy of restitution is the avoidance of unjust enrichment," and we must ensure that the defendant does not keep benefits that in equity and

16

good conscience it should not be allowed to keep. *City of Harker Heights v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex. App.—Austin 1992, no writ) (quoting Dan B. Dobbs, *Remedies* § 4.1, at 224 (1973)). Special damages are those foreseeable damages that are the natural result of the defendant's wrongful acts. *See Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 901 (Tex. 2011); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997); *Wong Grocery Co. v. Lambkin*, No. 04-16-00831-CV, 2018 WL 3369955, at *8 (Tex. App.—San Antonio July 11, 2018, pet. filed) (mem. op.).

Because appellees opted for rescission, their available damages are not based on what would have been due under the contract, but rather what would make them whole for their reliance on the contract, restoring them to the position they would have been in had they not entered into the contract. *See Italian Cowboy*, 341 S.W.3d at 345. The jury's efforts to restore the status quo resulted in a remedy supported by the evidence: $25,000 in unpaid Expo sponsorship fees, $111,073.20 for the Barishes' salaries and health insurance, and $52,695.74 for other expenditures by the Barishes made for Enterprises' benefit.

Joel Barish testified that before entering into the Agreement, Language People agreed to be a Platinum Sponsor for DeafNation's Expos. After entering into the Agreement, however, Language People decided it was no longer obliged to make $25,000 of those payments, related to the five events held in the second half of 2015. It apparently justified its refusal to fulfill its preexisting obligation by pointing to the new contractual relationship between it and DeafNation. Joel testified that despite Language People's refusal to pay for its sponsorship of the remaining Expos, Language People continued to be given "top sponsorship" because "[w]e had left it to continue as normal for the public's eye."

17

Language People does not dispute the $25,000 sum and instead argues that because the Agreement did not impose an obligation to pay such costs, its breach of the Agreement did not result in the unpaid Expo fees. However, because there was evidence that Language People justified its failure to fulfill its preexisting sponsorship agreement because of the Agreement, which the jury determined it then breached, the evidence supports the jury's finding that Language People should pay as restitution damages the sponsorship fees that it would have paid but for entering into the Agreement. The evidence thus supports the jury's finding that Language People should pay appellees $25,000 in unpaid Expo sponsorship fees.

Further, under the Agreement, Joel and Jed Barish were to work for Enterprises in exchange for annual salaries of $100,000 plus insurance benefits, and the Barishes testified that after signing the Agreement and leading up to their respective resignations, they both worked on behalf of Enterprises. Although Joel testified that he and Jed had been paying themselves salaries before agreeing to sell DeafNation to Language People, that fact is not relevant to our consideration—our inquiry asks not whether they would have received salaries through DeafNation if they had never entered into the Agreement but whether their efforts after signing the Agreement benefitted Language People rather than DeafNation. *See id.* at 345-47.

In *Italian Cowboy*, the supreme court affirmed an award of damages for labor expended by the plaintiff's owner, saying, "Certainly a business owner's time and effort have value, and we see no reason why the trial court could not measure that value against the cost of hiring someone else instead." *Id.* at 346-47. The evidence supports a determination that the Barishes' work after April 2015 was to the benefit of Enterprises, and therefore to Language People, and Language People acknowledged through the Agreement that the Barishes' expertise

and efforts were worth $100,000 a year plus benefits.[8]  Joel testified that Language People never paid those salaries or benefits and instead that he and his brother paid them from separate DeafNation funds—which were supposed to be excluded from the transaction—expecting to be reimbursed by Language People.[9]  Under a restitution standard, the Barishes should be compensated for their work on behalf of Enterprises in reliance on the breached contract, and sufficient evidence supports the jury's award of $111,073.20 for their salaries and insurance in that regard.  *See id.*

Finally, Joel testified that DeafNation incurred $52,695.74 in credit-card charges on behalf of Enterprises, including travel expenses, office expenses, Expo costs, and business-insurance costs.[10]  He explained that the credit-card bills were paid from DeafNation funds, with an unfulfilled expectation that they would be repaid by Language People.  He further testified that the DeafNation credit card was never used for personal expenses.  Although the jury question may have been inartfully drafted, Language People did not object to its wording.[11]  The

---

[8] Although the Barishes may have expressed frustration or even uncertainty with their new roles and the influence they were able to exert, both brothers testified that they were employed as CEOs—Joel of Enterprises and Jed of a new Language People entity called LP Communications—and both testified about their attempts to work within the new entities.  Both brothers also testified that they shifted their focus from DeafNation to Enterprises and Language People and only "restarted" or went back to "doing business as" DeafNation after their resignations.

[9] Joel was asked, "Did you ever receive any salary payments from the resources of Language People as opposed to your own money?"  He answered, "No, never."

[10] For instance, Joel testified that he was directed by Lisa Wrench to go to a rally in the Summer of 2015 in Washington, D.C., despite his concerns about the costs.  He further stated that although Wrench told him to pay for insurance related to putting on the Expos from DeafNation funds and that Language People would repay him, "I was never reimbursed."

[11] The question asked how much the Barishes should be awarded for "the sums agreed to be turned over to Joel Barish and Jed Barish from the DeafNation, Inc. bank account."  Because Language People did not object, we consider the evidence in light of the jury charge, even if it is not entirely correct.  *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 727 (Tex. 2001); *R & R Res. Corp. v. Echelon Oil & Gas, L.L.C.*, No. 03-07-00636-CV, 2010 WL 5575919, at *10 (Tex.

jury determined that appellees were entitled to repayment of the Enterprises-related expenses set forth on the credit-card bills that were paid from DeafNation funds, and the evidence is sufficient to support that finding. *See Southwest Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 713 (Tex. 2016) (jury generally has discretion to award damages within range of evidence).

Because sufficient evidence supports three jury determinations that together total more than the damages awarded by the district court, we need not consider Language People's arguments related to DeafNation's lease or RV payments. We overrule Language People's challenge to the sufficiency of the evidence supporting the damages award.

## CONCLUSION

Having overruled Language People's arguments on appeal, we affirm the district court's judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Kelly and Smith
  Concurring and Dissenting Opinion by Justice Smith

Affirmed

Filed:   October 9, 2019

_____

App.—Austin Jan. 14, 2011, pet. denied) (mem. op.). The question can be fairly read as asking what sums were paid from DeafNation funds for the benefit of Enterprises and Language People, aside from salaries, insurance, lease payments, and RV payments, all of which were specifically asked about in the charge.